Jonathan Zavin (JZ-1846)
Alexandra N. DeNeve (AD-2386)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154-0037
(212) 407-4000
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT FERRANDINO,<br><br>Defendant. | Civil Action No.: 2:06-cv-00586-DRH-ETB |

**PLAINTIFF WARNER BROS. ENTERTAINMENT INC.'S STATEMENT WITH RESPECT TO DAMAGES**

**A. Plaintiff Is Entitled To Statutory Damages In The Total Amount Of $6,000.**

A plaintiff may elect to recover statutory damages instead of actual damages or the infringer's profits. 17 U.S.C. section 504(c) provides:

> [a] copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

(emphasis added). However, section 504(c) further provides that where an infringement is committed willfully, a court has discretion to increase the award of statutory damages to $150,000 per infringement. 17 U.S.C. § 504(c)(2).

"Statutory damages are not meant to be merely compensatory or restitutionary." Yuman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001). An award of statutory damages serves two purposes: It compensates the plaintiff for the infringement of its copyrights, and it punishes the defendant for his or her unlawful conduct. Los Angeles News Service v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998). Accordingly, courts routinely grant statutory damage awards in amounts greater than the statutory minimum as part of default judgments in copyright infringement cases. See, e.g., Ortiz-Gonzalez, 277 F.3d at 63-64 (award of greater than minimum statutory damages as part of default judgment); Getaped.com, Inc. v Cangemi, 188 F. Supp. 2d 398, 400-402 (S.D.N.Y. 2002) (on default judgment, awarding $30,000 statutory damages for single infringement); Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 2-3 (1st Cir. 1983) (award of greater than minimum statutory damages as part of default judgment). Plaintiff has established that Defendant downloaded and distributed, with willful disregard for and indifference to Plaintiff's rights, at least one of Plaintiff's copyright motion pictures, and thus could request under the Copyright Act statutory damages of up to $150,000.

In this case, however, Plaintiff seeks to recover a total of only $6,000 in statutory damages. Rather than just arbitrarily seeking the maximum amount of statutory damages per infringement, Plaintiff is requesting what it believes to be the amount that is reasonable and justified under the circumstances of this case, and the costs incurred by

Plaintiff in seeking to protect its exclusive rights under copyright law. See Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (noting that in measuring damages, a court should be guided by what is just in the particular case, considering the nature of the copyright and the circumstances of the infringement). Plaintiff believes that statutory damages in an amount somewhat greater than the minimum permitted per infringement, in the total amount of $6,000, are justified, and the courts that have considered similar cases have agreed[1], for the following reasons:

1. **Defendant's Actions Were Willful: Defendant Distributed At Least One Motion Picture That Defendant Knew Or Should Have Known Was A Pirated Copy Because It Had Not Yet Been Released On DVD/ Home Video.**

There can be no question that Defendant's actions were willful, as that term is understood in the U.S. Copyright Law. One of the motion pictures that Defendant downloaded, and offered for others to download, *House of Wax*, was either still in motion picture theaters and/or had not been released on DVD/ home video at the time of

---

[1] See Columbia Pictures Industries, Inc. v. Atkins, Case No. 3:05-cv-05045-SW-RED (W.D. MO) (Dorr, R.) (ordering Defendant to pay $6,000 in damages for one motion picture infringed); Twentieth Century Fox Film Corporation, et al. v. Bland, Case No. 1:05-cv-04533 (N.D. IL) (Moran, James B.); Twentieth Century Fox Film Corporation, et al. v. Cartwright, Case No. C05-700JLR (W.D. WA) (Robart, James L.); Metro-Goldwyn-Mayer Pictures Inc., et al. v. Davis, Case No. 3:05-1112-CMC (D. SC) (Currie, Cameron McGowan.); Paramount Pictures Corporation, et al. v. Joseph Ducarmel, et al., Case No. 04-CV-08999 (S.D. NY) (Kaplan, L.); Columbia Pictures Industries, Inc. v. Cockrell, Case No. SA-05-CV-729 (W.D. TX) (Garcia, Orlando L.); New Line Productions Inc., et al. v. Gill, Case No. C2-05-376 (S.D. OH) (Sargus, Jr., Edmund A.); Screen Gems, Inc., et al. v. Nguyen, Case No. 05-cv-1714 (E.D. PA) (Katz, Marvin); Warner Bros. Entertainment Inc., et al. v. Triplett, Case No. 4:05CV00020 (W.D. Va.) (Kiser, Jackson L.); Twentieth Century Fox Film Corporation, et al., v. Turner, Case No. 05-21019-CIV-COOKE (S.D. FL) (Cooke, Marcia G.). These orders are attached to Plaintiff's Memorandum in Support of its Application for Default Judgement as Exhibit "1."

Defendant's infringement. (Declaration of Lauren Nguyen ("Nguyen Decl.") ¶ 5.) Because physical or digital copies of a motion picture are not distributed to the general public until the DVD/ home video release date (and this fact is widely known), Defendant knew, or should have known, that no *legal* copies of this motion picture were then publicly or legitimately available and that Defendant was distributing a pirated copy of the motion picture. (Id., ¶ 7.) The unauthorized distribution of a pirated copy of a motion picture prior to its release on DVD/ home video can cause even greater economic harm to the copyright owner because it tends to destroy the theatrical market as well as the subsequent DVD/ home video market for the motion picture. (Id., ¶ 8.) This knowing distribution of a pirated motion picture more than justifies an award of greater than minimum statutory damages.[2]

**2. The Total Amount Of Damages Awarded To Plaintiff Should Not Depend On The "Accident" Of The Number Of Infringing Files Plaintiff Was Able To Download.**

Plaintiff is requesting total statutory damages in the amount of $6,000 because it believes that this total amount is reasonable and conservative given Defendant's conduct and the harm to Plaintiff. It is likely that the work that Plaintiff downloaded from Defendant is only a fraction of the copyrighted works that Defendant actually infringed.

---

2 The fact that Defendant was distributing a pirated copyrighted work distinguishes this case from those generally filed by the member companies of the Recording Industry Association of America against persons illegally trading files on the Internet. In those cases, the songs sought to be protected were, unlike here, widely and publicly available through legitimate means (including free radio airplay) at the time of infringement, and thus, while the defendants were still infringers because of the unauthorized distribution, they were not distributing pirated copies of copyrighted material like Defendant here.

Defendant should not gain the benefit of a windfall because of the accident of how many separate works Defendant was caught infringing on a given day.

Plaintiff has conclusive evidence that Defendant illegally distributed, and offered to distribute to tens of thousands of others persons (if not more), one of Plaintiff's motion pictures. (Declaration of Thomas Carpenter ("Carpenter Decl."), ¶ 5.) This evidence was collected by MediaSentry, a company retained by Plaintiff to identify and gather evidence of infringements of Plaintiff's copyrighted motion pictures on online media distribution systems, otherwise known as "peer-to-peer" ("P2P") networks. (Nguyen Decl., ¶ 3; Carpenter Decl., ¶ 4.) It is likely that the actual number of works that Defendant infringed is greater than one for the following reasons.

First, even where a user is offering numerous motion pictures for download it is technologically difficult for MediaSentry to download multiple files. Because motion picture files are large, transmission is time-consuming (typically at least two hours). (Carpenter Decl., ¶ 7.) Further, during this file transfer period, a user may go off-line (*i.e.*, turn off his or her computer or log out of the P2P application), or the connection permitting transmission of the infringing files from the user's computer to MediaSentry's computer may be otherwise disrupted. (Id.)

Second, Defendant's own "shared directory" (*i.e.*, the listing of files on Defendant's computer available for download by others) evidences that Defendant was distributing infringing motion pictures in addition to those set forth in the Complaint. (Id., ¶ 6.) Specifically, Defendant's shared directory shows that Defendant was distributing as many as three copyrighted motion pictures as to which Plaintiff and/or other members or affiliates of members of the Motion Picture Association of America

hold the relevant exclusive distribution rights. (Id., ¶ 5,6.) It would seem unfair and somewhat arbitrary to distinguish between Defendant and another illegal file-sharer sharing this same number of copyrighted motion pictures for whom Plaintiff was able to download all the pictures, rather than one.

### 3. Plaintiff Should Be Reasonably Compensated For Lost Profits.

Although Plaintiff need not prove actual damages to be entitled to an award of statutory damages, lost profits may be considered in the calculation of statutory damages. Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998); Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986).

There are approximately 9 million users on the various P2P networks at any given time. (Nguyen Decl., ¶ 10.) Nearly 4 million of these users employ broadband technology to connect to the Internet. (Id.) A recent study suggests that, at any given time, at least 5% (or 200,000) of these users are actively using these P2P networks to illegally download motion pictures. (Id.) Assuming an average download time of two hours, this means that 200,000 motion picture files are exchanged every two hours, and that 2.4 million files are exchanged per day. (Id.) Given the scale of this infringing activity, digital piracy is estimated to have cost the motion picture industry in excess of $858.5 million in 2004. (Id.) This figure is projected to increase to $1.7 billion by 2010. (Id.)

Each illegal download potentially impacts ticket, home video and/or DVD sales as well as motion picture rental revenues,[3] and, as a consequence, results in lost profits.

---

3 As noted above, Defendant has downloaded and offered for download one motion picture still in theatrical release at the time of infringement. Because each download of this motion picture may result in the loss of at least two sales -- a ticket at the movie

(Id., ¶ 8.) However, Defendant has not simply downloaded Plaintiff's motion pictures, and thereby deprived Plaintiff of the sale of a few motion picture tickets, DVDs or motion picture rentals. Defendant's conduct has been exponentially more damaging to Plaintiff. By offering Plaintiff's copyrighted motion picture for download by tens of thousands or even millions of others, Defendant has potentially deprived Plaintiff of significant sales and profits it would have derived from its investment in the creation of motion pictures. (Id., ¶ 9.) In this light, the amount that Plaintiff seeks in statutory damages is reasonable and hardly excessive. Further, as several district courts have observed, it is important to place infringers on notice that "it costs less to obey the copyright laws than to violate them." See Broadcast Music v. R Bar of Manhattan, Inc., 919 F.Supp. 656, 660 (S.D.N.Y. 1996) (quoting Rodgers v. Eighty Four Lumber Co., 623 F.Supp. 889, 892 (W.D. Pa. 1985)).

**4. The Total Amount Of Statutory Damages Sought Is Reasonably Related To Plaintiff's Costs Of Protecting This Property From Defendant's Illegal Activity.**

In addition to the legal fees directly attributable to this case (which fees are separately sought herein), Plaintiff has incurred considerable costs in the protection of its property rights against Defendant, and those like Defendant. (Nguyen Decl., ¶ 11.) To find the specific individuals participating in this infringing conduct, including Defendant, and to obtain the evidence necessary to proceed against them, Plaintiff retained – at considerable expense – anti-piracy consultants MediaSentry to detect unauthorized

---

theater and a subsequent purchase of the DVD/ home video – Defendant's infringements have impacted both theatrical and DVD/ home video revenue streams. (Nguyen Decl., ¶ 8.)

distribution of digital copies of Plaintiff's copyrighted motion pictures. (Id.) Once MediaSentry identifies infringers such as Defendant, which identification initially includes only an Internet Protocol ("IP") address for the infringer, Plaintiff's counsel must review this evidence themselves and prepare John Doe lawsuits to obtain the discovery necessary to identify the names of the illegal file-sharers.[4] (DeNeve Decl., ¶ 4,5; Nguyen Decl., ¶ 11.) As such, just to get in position to bring a lawsuit such as the one against this Defendant, Plaintiff has to expend somewhere between $3,000 and $5,000. (Nguyen Decl., ¶ 11.) These expenditures may be, and should be, considered in determining the total amount of statutory damages awarded against this Defendant.

5. **A Statutory Damages Award Of $6,000 Will Ensure That Downloading Motion Picture Files Costs No Less Than Downloading Music Files.**

Although it takes several hours to download a motion picture in full, a music file may be downloaded in a small fraction of that time. (Carpenter Decl., ¶ 7.) For this reason, Plaintiff simply cannot download as much evidence of as many separate infringements from each defendant as can recording industry plaintiffs. (Id.) Specifically, the recording industry often litigates on the basis of infringements of ten individual songs (*i.e.*, separate copyright works), and thus is generally awarded total

---

4 The IP address is a unique number assigned to each user by the internet service provider ("ISP") via which the user accesses the internet. (Carpenter Decl., ¶ 9.) MediaSentry can identify the IP address and the ISP for the infringer. (Carpenter Decl., ¶ 5,9.) The Plaintiff must then start a "John Doe" suit in the jurisdiction in which the ISP is located, in order to serve discovery on the ISP to determine the identity of the infringer. (DeNeve Decl., ¶ 5.) Once the infringer is identified, if the Defendant refuses to settle the matter, then the Plaintiff must start a second lawsuit (e.g., the instant action), in the jurisdiction in which the infringer resides. (DeNeve Decl., ¶ 9.)

statutory damages in an amount of $7,500 or greater.[5] (Nguyen Decl., ¶ 12.) For the technological reasons stated above, Plaintiff can rarely download (*i.e.*, secure conclusive evidence of) more than 1-3 infringing files offered by a given defendant. (Carpenter Decl., ¶ 7.) Yet, the infringement is no less wrong with respect to motion pictures than to music, simply because the time and technical challenges needed to download a single motion picture are greater than the time needed to download ten songs. It would be unfair and arbitrary to award damages in a smaller amount for an individual committing motion picture infringement than for an individual committing music infringement.

Indeed, it is exponentially more expensive to produce a motion picture than a single song. The average motion picture currently costs $100 million to bring to market. (Nguyen Decl., ¶ 6.) In assessing statutory damages, courts routinely take into account the nature of the copyright. See Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (noting that in measuring damages, a court should be guided by what is just in the particular case, considering the nature of the copyright and the circumstances of the infringement). Therefore, the extremely costly investment that Plaintiff made in creating the copyrighted work infringed by Defendant weighs in favor of a high statutory damages award, and certainly not one that is less than the amount typically obtained in the very similar recording industry Internet infringement actions, and is reasonable and conservative under the circumstances of this case.

---

5 See e.g., Maverick Recording Co., et al v. Alexander, Case No. 4:04-cv-04415 (S.D. Tex.) (Ellison, K.); Virgin Records America, Inc., et al. v. Cannon, Case No. CV05-1482 CBM (CWx) (C.D. Cal.) (Marshall, C.); Virgin Records America, Inc., et al. v. Rochester, Case No. 04-CV-9896 (RCC) (S.D.N.Y.) (Casey, R.); Motown Record Co. L.P., et al. v. Bey, Case No. 05C 1714 (E.D. Ill.) (Pallmeyer, R.). These orders are attached to Plaintiff's Memorandum in Support of its Application for Default Judgment as Exhibit "2."

**B. This Court Should Award Plaintiff Its Attorneys' Fees And Costs Of Suit.**

Courts routinely award attorneys' fees and costs on default judgment. See, e.g., Warner Bros. v. Caridi, 346 F.Supp.2d 1068, 1074-75 (C.D. Cal. 2004); Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp.2d 1310, 1315-16 (S.D. Fla. 2003).

Section 505 of the Copyright Act provides that the Court may, in its discretion, award full costs to a prevailing party in a civil copyright action. Such costs may include reasonable attorneys' fees. 17 U.S.C. § 505. Although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception. Micromanipulator Co. v. Bough, 779 F.2d 255, 259 (5th Cir. 2003). In exercising this discretion, courts may be guided by the nonexclusive factors articulated by the Third Circuit in Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986). Such factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need to advance considerations of compensation and deterrence." (Id.)

In this case, each of these considerations supports an award of attorneys' fees and costs. There can be no justification for Defendant's action. Defendant has not and cannot advance any justification that is neither frivolous nor objectively unreasonable. Further, while Plaintiff is an admittedly successful company, even the largest company could not continue to enforce its rights against the kind of Internet piracy indulged in by Defendant if it had to absorb the cost of suing each individual infringer such as Defendant. Given the widespread infringement of Plaintiff's copyrights, if defendants are not generally required to pay the prevailing plaintiffs attorneys' fees and costs in this

type of litigation, it would unfairly shift the burden of defendants' illegal actions onto Plaintiff and impair Plaintiff's ability to enforce its rights and the purpose of the copyright law will not be served.

Plaintiff seeks $1,229.24 in attorneys' fees and costs. As demonstrated by the billing statements submitted to the Court, the time expended was reasonable, and the rates requested are commensurate with those generally charged for similar work in this district. (DeNeve Decl., ¶ 16.) The costs incurred by Plaintiff, and requested herein, were similarly reasonable, with the majority attributable to filing and service costs, and other costs incidental thereto. (Id.) For the foregoing reasons, Plaintiff requests that it be awarded its attorneys' fees and costs.

Dated: New York, New York

October 5, 2006

Attorneys for Plaintiff

By: [signature]

Jonathan Zavin (JZ-1846)
Alexandra N. DeNeve (AD-2386)
Loeb & Loeb LLP
345 Park Avenue
New York, New York 10154-0037
Telephone: (212) 407-4000
Facsimile: (212) 407-4990

NY532976.1